HUSKISSON
v.
HAWAIIAN DREDGING CO.
MITCHELL v. WALLER.
No. 10968.

United States Court of Appeals
Seventh Circuit.
April 21, 1954.

Warren E. Burger, Asst. Atty. Gen., Hubert H. Margolies, Atty., Department of Justice, Washington, D. C., Robert Tieken, Irwin N. Cohen, U. S. Attys., Chicago, Ill. (Paul A. Sweeney, Atty., Department of Justice, Washington, D. C., Benjamin Forman, Atty., Department of Justice, New York City, of counsel), for intervenor-appellant.

George W. Lennon, Louis M. Mantynband, George L. Siegel, J. Herzl Segal, Chicago, Ill. (G. Gale Roberson, Henry J. Shames, Chicago, of counsel), for respondents-appellees.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This appeal comes from an order entered by the district court June 15, 1953, authorizing the distribution by its clerk of $125,000, deposited with him under the terms and conditions of an order entered May 14, 1952. Prior to a detailed consideration of these orders, as well as a statement of the contested issues, it appears essential to make a statement of the proceedings which give rise to the present controversy.

A suit was commenced on January 17, 1947, by a large number of persons (hereinafter referred to as plaintiffs), in which action others subsequently joined so that ultimately the plaintiffs numbered about 790 persons. Named as defendants were five privately operated construction companies (hereinafter referred to as defendants or contractors), by whom plaintiffs were employed. The suit was for the recovery of salaries, bonuses and subsistence allegedly due plaintiffs under their contracts of employment and for the recovery of damages resulting from an alleged failure to provide plaintiffs with a safe place to work. The defendants had been engaged in the performance of contracts with the Navy Department to construct defense installations on certain islands in the Pacific Ocean. By these basic contracts, the United States agreed to pay "the actual net cost to the contractors of any recoveries due to accidents or damages to persons or property directly incident to operations under this contract and not due to gross negligence of the contractors" and, upon the termination of the contract, to "assume and become liable for all obligations, commitments and claims that the contractors theretofore in good faith may have undertaken or incurred in connection with said work in accordance with the provisions of this contract."

Upon the outbreak of war between the United States and Japan, on December 7, 1941, and the invasion of Wake, Guam and the Philippines by the armed forces of the Japanese government, the employees of defendant contractors (including plaintiffs) were captured and imprisoned. Some were killed by the Japanese or died in Japanese prison camps. Those who survived were liberated after

V-J Day. The suit related to this period of detention by the enemy. Congress became aware of the circumstances which engulfed employees of certain war contractors, including the plaintiffs, and enacted a series of statutes for their benefit. There is no occasion to review these various relief measures prior to the Act of December 2, 1942, as amended, 56 Stat. 1028, 42 U.S.C.A. §§ 1701–1717. A provision of this Act, 42 U.S.C.A. § 1705(c), provides in substance that any employee who after having obtained the benefits of the Act brought suit against the employer or the United States "to recover wages, payments in lieu of wages, * * * or for liquidated or unliquidated damages under the employment contract, or any other benefit, * * * where a recovery is made or allowed, the Secretary shall have the right of intervention and a lien and right of recovery to the extent of any payments paid and payable under this subchapter * * *."

Pursuant to the terms of the 1942 Act, as amended, payments of approximately $5,000,000 were made to the plaintiffs. Thereafter, on July 3, 1948, Congress enacted the War Claims Act, 62 Stat. 1241, 50 U.S.C.A.Appendix, §§ 2001–2013, conferring additional benefits upon employees within the coverage of the 1942 Act, as amended. Pursuant to the provisions of Sec. 4(a) of the War Claims Act of 1948, 50 U.S.C.A. Appendix, § 2003(a), plaintiffs received amounts aggregating $4,500,000. Thus, by this Act plaintiffs recovered the total amount for which they were suing the defendant contractors as pleaded in their complaint ($9,500,000), after deducting therefrom the amounts previously paid to them or their dependents under the 1942 Act ($5,000,000). As a statutory condition precedent to the receipt of any such monies under the 1948 Act, plaintiffs executed releases running to the defendant contractors and the United States of America from any and all claims arising under or out of their contracts of employment.

Defendants answered the complaint, denying numerous allegations thereof, and pleaded a number of affirmative defenses. Subsequent to the time payments were made to plaintiffs in the amount of $4,500,000 under the 1948 Act and releases executed in the manner above stated, defendants pleaded such releases in bar of the action, and a summary judgment was entered in their favor.

We now approach the proceedings which give rise to the instant controversy between the Secretary of Labor (hereinafter referred to as intervenor) and certain named parties who were the attorneys for and represented plaintiffs in the original suit (hereinafter referred to as attorneys or respondents). Prior to the entry of the summary judgment in favor of the defendant contractors, the attorneys for plaintiffs served a written notice upon such defendants in which they claimed an attorneys' lien under a retainer agreement which they had with the plaintiffs. This agreement called for the payment of 10% of "the amount of money received * * * by settlement or any other means * * * and I hereby assign to you and instruct [defendants] to pay you a sum equal to ten percentum (10%)." This lien notice was given pursuant to the Illinois Attorneys' Lien Law, Ill.Rev.Stat. 1953, Chap. 13, Sec. 14.

On August 11, 1950, the attorneys filed in the original proceeding a petition for enforcement of attorneys' lien in the amount of $450,000 (10% of the amount paid to plaintiffs under the 1948 Act). Defendant contractors by their personal attorney answered this petition, denied material allegations thereof and pleaded a number of affirmative defenses. On April 11, 1951, the Secretary of Labor filed a motion seeking leave to intervene in the attorneys' lien controversy, asserting that by virtue of the 1942 Act, as amended, he was entitled to a lien upon any recovery the attorneys might be allowed against the defendant contractors. This was the first

time that any agency of the United States attempted to become a party to any of the proceedings, and intervention was then sought solely for the limited and specific purpose asserted in the intervening complaint. It is true that some of the pleadings in the original proceeding carried the name of the United States Attorney in addition to that of the personal attorneys for the defendant contractors but, even so, it appears that the government attorney appeared on behalf of the defendant contractors rather than on behalf of an agency of the government.

The motion of the Secretary of Labor, filed April 11, 1951, was not acted upon by the court, for some reason not clearly disclosed by the record. However, it is reasonable to presume that the court regarded the request to intervene as premature, in view of the limited and specific purpose for which intervention was sought. At any rate, it appears obvious that there was no occasion at that time to permit intervention by the Secretary of Labor for the purpose of attempting to establish a lien upon a recovery which might or might not be had by the attorneys against the defendant contractors for an attorneys' lien.

In any event, the attorneys and the defendant contractors compromised and settled the attorneys' lien controversy which was embodied in the much disputed order of May 14, 1952. This order in its preamble discloses that the matter came on for hearing upon the joint motion of the attorneys (naming them) and the defendant contractors (naming them) and, among other things, recites:

"That as a result of negotiations for settlement the Attorneys agreed to accept and the Contractors agreed to pay $125,000 in full settlement of the claims asserted by the Attorneys in their said petition, but the assertion by the Intervenor of his claim of a lien and right of recovery gave-rise to the question of whether the Attorneys or the Intervenor are legally entitled to the said $125,000 and the Contractors, being unwilling to pay said amount until said question is judicially determined, are in the position of an impartial stakeholder of the sum of $125,000, and are concerned only with the problem of making the aforesaid payment to the person or persons legally entitled thereto, and have agreed to pay the said sum into Court to be disposed of as hereinafter provided. The Attorneys have agreed in consideration thereof, to release all their claims against the Contractors and the United States whether asserted in said petition for the enforcement of an attorneys' lien or otherwise, arising by reason of payments made to plaintiffs and intervening plaintiffs in said cause by the Contractors or the United States of America under legislation now in force or which may hereafter be enacted."

The order provides (1) that the intervenor (Secretary of Labor) is granted leave to file his intervening complaint; (2) that all parties named in such complaint be permitted to file answers thereto; (3) that the contractors shall "deposit with the Registry of this Court the sum of $125,000, which sum shall be paid to the persons or person legally entitled thereto as ordered by this Court upon the adjudication of the issues raised by the intervening complaint as amended and all answers or other pleadings thereto"; (4) that the attorneys execute and deliver to the contractors concurrently with the $125,000 deposit releases in the form attached to the order, and (5) that upon proof of the deposit of the money with the clerk as directed and of the execution and delivery of the releases as ordered, the petition of the attorneys for the enforcement of a lien against the contractors should be dismissed "without prejudice to the adjudication of the issues raised by the said intervening complaint as amended and any answers or other pleadings thereto."

Pursuant to the authority contained in the order of May 14, 1952, the Secretary of Labor on the same date filed what is designated as an amendment of his intervening complaint, in which reference is made to the order "providing for the deposit by the defendants in said cause into the Registry of this Court of the sum of $125,000 upon the conditions and for the purposes and disposition stated in said order." The complaint alleged "that if any award of said $125,000 should be made to the attorneys for the plaintiffs * * * in said cause it should, as a matter of law, be held to be a 'recovery made and allowed' within the meaning of those words in said section 1705(c) of Title 42 of U.S.C. as amended, and that your intervening complainant has a superior right thereto under the provisions of said statute."

The order of May 14, 1952 was fully complied with. The defendant contractors deposited with the clerk $125,000 in the form of a check drawn by such contractors on their account in the Security First National Bank of Los Angeles, which check bore the notation, "Payment of Attorneys' fees pursuant to settlement agreement as approved by the Chief, Bureau of Yards and Docks * * *." Releases running to the defendant contractors, as well as to the United States of America, were also filed.

At the hearing preceding the entry of the order of May 14, 1952, all parties were represented by counsel, including the attorneys, the defendant contractors and the Department of Labor by a representative of the Department of Justice. In view of the position taken by the intervenor (Secretary of Labor) subsequently noted, the court colloquy which took place prior to the entry of the order appears pertinent. The personal attorney for the defendant contractors explained the situation to the court in some detail, advised the court that a settlement had been arranged between the defendants in the original case and the attorneys relative to the latter's petition for the enforcement of an attorneys' lien, and stated: "The attorneys for the plaintiffs, who are the petitioners in the case, are claiming that money under our settlement with them. But because of the fact that there is a motion for leave to intervene on the part of the Department of Labor, which asserts a prior lien to that money, it was determined that the only way that we could speedily determine it was if the contractors, who are the respondents, would pay the $125,000 into the registry of the court. And then the matter would be adjudicated as between the Department of Labor and the attorneys, as to which had the right to that money."

Thereafter, the contractors as well as the attorneys who had been made parties to the intervening complaint filed answers. Subsequently, numerous proceedings were had which need not be related in detail. On June 27, 1952, an order was entered which recited that the sum of $125,000 had been deposited with the registry of the court, as provided in the order of May 14, 1952. This same order provided for the dismissal of the petition of the attorneys for the enforcement of their lien against the defendant contractors, without prejudice to the adjudication of the issues raised by the Secretary of Labor's intervening complaint, in accordance with the court's order of May 14, 1952. On the same date, the attorneys filed a petition requesting that the $125,000 thus deposited with the clerk be paid to them. On July 24, 1952, a motion was filed by the Secretary of Labor requesting that the petition of the attorneys be stricken "on the ground that the petition is an improper pleading under established federal practice and under the particular situation existing in this case." Thereafter, the matter came on for hearing, which culminated in the order of June 15, 1953 (the order appealed from), which recites that the matter was heard upon the amended intervening complaint filed by the Secretary of Labor on June 14, 1952, the motion of the attorneys to dismiss said intervening complaint filed on June 27, 1952, and the motion

of the Secretary of Labor filed July 24, 1952, to dismiss the petition of the attorneys. The order directed that the intervening complaint be dismissed, and overruled the motion of the Secretary of Labor to dismiss the petition filed by the attorneys. The order further authorized and directed the clerk of the court within sixty days to pay to the attorneys the $125,000 then on deposit in the registry of the court.

No appeal was taken from any order other than that of June 15, 1953. That order was entered by Judge John P. Barnes who, in connection therewith, rendered a memorandum opinion. It is pertinent to note that Judge Barnes also entered the order of May 14, 1952, and was thus familiar with the proceedings prior to the entry of the order now under attack.

Intervenor in his brief states the contested issues as follows:

"1. Whether the question of the validity of respondents' attorney's lien is foreclosed by the order of May 14, 1952.

"2. Whether the Illinois Attorneys' Lien Law confers a lien upon respondents in the circumstances of this case.

"3. Whether Section 4(a) of the War Claims Act of 1948 precludes the imposition of an attorney's lien under the Illinois Attorneys' Lien Law.

"4. Whether, if respondents are entitled to an attorney's lien, the United States has a superior lien under Section 105(c) of the Act of December 2, 1942, as amended."

■ Although not raised by any pleading, it appears from the court's opinion that intervenor sought to inject the same issues in the district court, which held that issues 1, 2 and 3 were not properly before it at the time of the entry of the order under attack, and respondents contend that those issues are not properly before this court. We agree with the holding of the district court that they were not properly issues there and with the contention of the respondents that they are not proper issues here. A statement of the previous proceedings, the relevant portions of which we have heretofore related and need not reiterate, can lead to no other conclusion. Intervenor makes the specious argument that "the responsible officials of the Navy intended only to fix the sum of $125,000 as the quantum of respondents' claim should it be judicially determined that respondents are entitled to a lien." True, the officials of the Navy Department approved the settlement, but it appears obvious that such approval was sought and obtained by the defendant contractors because of a contractual relation between them and the government, with which respondents had no concern. And the fact remains that neither the Navy Department nor any other agency of the government was a party to the proceedings at the time of the entry of the order of May 14, 1952. The sole issue before the court at that time arose from the petition of respondents asserting an attorney's lien against the five defendant contractors and the latter's defense thereto. Respondents claimed a lien for attorney fees in the amount of $450,000, and the defendant contractors by the defenses interposed denied all liability.

If the issue thus created had been pursued to its ultimate conclusion, it is hardly open to question but that respondents would have been entitled either to a lien in the amount of $450,000 or nothing. With the difficult legal questions involved the parties did what they had a right to do, that is, compromise and settle their differences by an agreement on the part of the attorneys to accept $125,000 in satisfaction of their claim and by which the defendant contractors agreed to pay said amount for a release of the liability asserted against them. This agreement was satisfied when the defendant contractors paid said amount into court in accordance with the order of May 14, 1952. Intervenor's contention, if accepted, would render the order meaningless and

of no effect. The parties, including the court, had just as well been occupied in working a crossword puzzle. The attorneys could have reduced the amount of their claim to $125,000, without any order of court and without any agreement or compromise with the defendant contractors. When the defendant contractors complied with the order by paying into court the amount agreed upon and as directed by the order, respondents' petition for the enforcement of an attorney's lien was dismissed. The issue as to an attorney's lien has thus been litigated, compromised and judicially determined by a court which had jurisdiction of both the parties and the subject matter. It has thus become final and is not, in our judgment, subject to attack in the instant proceeding.

Thus concluding, we find no occasion to follow intervenor in his lengthy dissertation, with the citation of numerous cases, designed to demonstrate that the Attorneys' Lien Law of Illinois confers no lien upon respondents in the circumstances of the case. If the argument has validity, it was available to the defendant contractors in defense of the claim for an attorney's lien. As already noted, however, the right of respondents to a lien under the Illinois law was adjudicated by the order of May 14, 1952, and is conclusive upon all who were parties to that proceeding.

Intervenor's argument in support of his contested issue 4 is more confusing than enlightening. It fails to recognize the adjudicated premise that respondents are entitled to recover $125,000 on their claim for an attorney's lien. Intervenor concedes, as we understand, that no claim for lien was made by the attorneys on account of the $5,000,000 paid under the 1942 Act, but that it was only asserted on account of the $4,500,-000 paid under the 1948 Act, which was the final and complete settlement made with the plaintiffs of the liability asserted against the defendant contractors in the original suit. As intervenor states in his brief, "The payments to the plaintiffs under the 1948 Act were of the full amounts due after crediting payments under the 1942 Act."

Intervenor states in his brief, "The lien here asserted by the Government has nothing to do with the amounts paid to the plaintiffs as wage claims under the War Claims Act. The payments to the plaintiffs under the 1948 Act were of the full amounts due after crediting payments under the 1942 Act. Hence, the payment of an additional $125,000 to the attorneys would have no justification in the 1948 Act. * * * The United States is not claiming a right to be reimbursed for the payments made under the 1948 Act, for that would reduce benefits thereunder to a stultifying gesture. But as to amounts recovered by the employees and their assignees, in a suit by the employees against the employers, which are neither required nor authorized by the War Claims Act, the United States is entitled, we submit, to reimbursement under Section 105(c) of the 1942 Act."

██ It seems to us that any plausibility contained in this reasoning is dissipated by the order of May 14, 1952, wherein it was adjudicated that the attorneys were entitled to a lien upon the payments made under the 1948 Act. True, the $125,000 paid by the defendant contractors was not provided for in the 1948 Act, but that sum was paid and, in accordance with the adjudication of May 14, 1952, properly paid in settlement of a claim under the Illinois Attorneys' Lien Act. And as previously indicated, we are unable to discern how the Navy's approval of the settlement made by the defendant contractors has any bearing upon the issue for decision. So far as the instant record discloses, the $125,000 was paid by the defendant contractors. Whether they have been reimbursed or at some time in the future will seek reimbursement from the government is an issue between the contractors and the government. That issue is of no concern to the attorneys nor, under the circumstances presented, of any concern to this court. Intervenor's position, if sustained, would have the

parties traveling about in a circle. The defendant contractors admitted liability to the attorneys in the sum of $125,000, which was incorporated in a judgment from which no appeal has been taken. Upon payment of that amount into court, intervenor stepped in and said he was entitled to the money. If successful in obtaining it, it would seem that the defendant contractors would be entitled to be reimbursed by the government. Thus, the defendant contractors would be in the same position as they were prior to their agreement to settle and compromise with the attorneys, and before the entry of the order of May 14, 1952, and the attorneys would be in a worse position because prior to that order they had pending a claim for an attorney's lien while after the order and as a result thereof their claim was dismissed and the defendant contractors released. Such an incongruous result would effectively nullify the order of May 14, 1952.

■ There is another reason which militates against intervenor's position, and that is that Sec. 105(c) of the 1942 Act refers to recoveries in a subsequent action as a result of a right which "accrued during or as to any period of time in respect of which payments under this title in such case have been made". The period specified refers to that from January 1, 1942 to November 1, 1945. Respondents' asserted right to an attorney's lien did not accrue during or as to that period of time. It accrued after the period specified as a result of (1) a retainer contract entered into between plaintiffs (clients) and respondents, after such period; (2) services rendered after such period as attorneys in a lawsuit filed after such period; (3) notice of an attorney's lien served after such period; (4) payments to plaintiffs under the War Claims Act of 1948 in settlement of their causes of action after such period and the use of the releases obtained thereby in discharge of the respondents' attorneys' lien claim.

Thus, it appears that the amount of $125,000 paid in settlement of respondents' claim for an attorney's lien against defendant contractors, pursuant to a court adjudication, was not a recovery upon any of the claims enumerated in the 1942 Act. Respondents were not included in the category of persons specified in that Act and their right in respect to such recovery accrued after the period specified in the 1942 Act.

We agree with the district court that the intervenor is not entitled to a lien upon the $125,000 paid in compromise of respondents' claims for attorneys' fees. In so concluding we do not intend by anything which we have said to intimate or express any opinion upon any issue which may exist or arise between the defendant contractors and the government. As before stated, any issue in that respect is irrelevant to the narrow and limited issue raised by intervenor in his amended complaint.

The order appealed from is
Affirmed.